UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12-cv-48-RJC

| | |
|---|---|
| MARION LAMONT SHERROD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| SID HARKLEROAD, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on consideration of several pending motions which will be addressed individually below.

I.   **BACKGROUND**

Plaintiff is an inmate in the custody of the North Carolina Department of Public Safety ("NC DPS") following a conviction for robbery with a dangerous weapon (principal) with a projected release date of November 19, 2022. According to his Complaint, Plaintiff was transferred to Marion Correctional Institution on September 2, 2009, "as a known inmate with a chronic seizure disability." (Doc. No. 1 at 7). Plaintiff contends that despite this "known" seizure disorder, Defendant John Morgan, a medical provider with the NC DPS, was deliberately indifferent to his medical condition by "[f]ailing in his duty to provide or renew medical restrictions and supplying documentation of said restrictions [] for the physical accommodation of his seizure disability." (Id.). One such example, as Plaintiff maintains, is that Defendant Morgan showed deliberate indifference by allowing custody staff Patricia McEntire to place him in a top tier cell. Plaintiff contends this action led to "substantial harm" due to the "consistent

1

'deliberate indifference' of the consideration of a known physical disability . . ." (Id.).

Plaintiff alludes to an incident on November 15, 2009 but does not provide factual detail about what happened in his Complaint. However, in the wake of an injury on November 15, 2009 after being placed in a room with a top tier cell, Plaintiff contends that Defendant Morgan continued to provide inadequate medical care by failing to provide "standard" treatment. Plaintiff reiterates that he suffered long-lasting harm and that he is being treated by ECU Physical Therapy "for his back pain and loss of feeling in lower extremities from his incident on 11-15-09." (Id. at 8).

Following Plaintiff's written grievances concerning his injury, Plaintiff alleges a conspiracy involving harassment during the investigation. For instance, Plaintiff contends that Defendant McEntire subjected him to "discrimination, harassment and retaliation . . . through the submission of fraudulent statements of [witnesses] by her subordinates . . . and the failure to investigate" Plaintiff's grievances. (Id. at 9).

Plaintiff alleges Defendants Margaret Johnson and Larry Bass, who Plaintiff identifies as nurses within Marion Correctional, "joined in conspiracy with custody staff" to portray Plaintiff as acting aggressively during his seizure episodes on November 15, 2009. Plaintiff charges that Defendants Johnson and Bass submitted fraudulent statements which were devoid of any actual "observations of Plaintiff's seizure disability" and this action led to continued medical indifference and increased pain. Plaintiff concludes by alleging that the actions or omissions of Defendants Johnson and Bass in suppressing information regarding his "known" seizure disorder led to retaliation against him and were motivated by "evil" intent such that his right to be free from cruel and unusual punishment was violated. (Id. at 10-11).

Plaintiff contends that Stephen Shook, as a security officer within Marion Correctional, accepted the version of events presented by Defendants Johnson and Bass and as a consequence, Plaintiff was upgraded to a higher security threat level.

On the whole, Plaintiff contends through his Complaint that his seizure disorder was "not treated per standard acknowledged standards of Medical Staff." Plaintiff maintains that the inadequate appreciation of his known seizure disorder along with the change in his security level based on the "fraudulent" statements provided during the course of the investigation of his grievance has caused him "substantial harm" through their "deliberate indifference" and violations of state and federal law. (Id. at 13).

Plaintiff continues by alleging that after this November 2009 seizure incident, prison officials began opening his legal mail which was part of unrelated, ongoing litigation. Plaintiff complained to "non-judicial government officials and other resources within the Department of Corrections, by using his right to 'privileged' mail." (Id. at 14). Some of this mail appears to have been intercepted, according to Plaintiff, and he was singled out for punishment for "sending out sealed 'privileged mail.'" (Id.).

Plaintiff contends that despite his protests regarding his legal mail, no action was taken to address the situation. In fact, Plaintiff alleges that prison officials, specifically Stephen Shook and Defendant Edwards, mailroom supervisor, restricted his ability to send legal mail contending that Plaintiff's classification as a greater security threat within the prison justified the enforcement of prison policy implementing the restrictions. Plaintiff maintains that these restrictions violate his constitutional right to send and receive confidential legal mail, unduly limit his access to the courts, and are directly related to his grievance concerning his November

3

Case 1:12-cv-00048-RJC   Document 58   Filed 02/20/13   Page 3 of 12

2009 seizures. (Id. at 16-17).

In his claims for relief, Plaintiff requests a court declaration that his rights have been violated, both through the treatment of his seizure disorder, and the limitation on his right to access the courts. (Id. at 4). Plaintiff also asks that the defendants be held criminally liable for violation of his First Amendment rights; that he be awarded compensatory damages in the amount of $1,000,000 against each defendant, and an award of punitive damages in the amount of $500,000 against each defendant. (Id. at 5). Finally, Plaintiff seeks appointment of counsel. (Id.).

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(A)(a), "the court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Following this review, the "court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. § 1915A(b)(1). Upon review, this Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).

A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in a complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

4

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether the complaint states a claim upon which relief can be granted. Although the Court must consider all well-pleaded allegations in the complaint as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and must construe all factual allegations in the light most favorable to the plaintiff, Harris v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III.  DISCUSSION

### A.  Defendant John Morgan's Motion to Dismiss

Defendant Morgan has moved to dismiss the complaint against him arguing, among other grounds, insufficiency of service of process under Rule 12(b)(5), lack of personal jurisdiction, and failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 24). Because the Court concludes as a matter of law that Plaintiff has failed to state a claim upon which relief can be granted against Defendant Morgan, the Court does not reach his other arguments regarding dismissal.

Plaintiff contends that Defendant Morgan was deliberately indifferent to his known seizure disorder and that this rises to the level of cruel and unusual punishment. A claim pled under 42 U.S.C. § 1983, based on an alleged lack of or inappropriate medical treatment, falls within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a

5

substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md.1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. A claim based solely on a difference of opinion as to the quality of such care is not sufficient to raise a constitutional claim. Id. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging

the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

In the present case, Plaintiff's allegations fall short of setting forth a legally cognizable claim against Defendant Morgan for medical indifference. Taken in the light most favorable to Plaintiff, his allegations tend to show that Defendant Morgan knew of Plaintiff's seizure disorder and provided medical treatment. Plaintiff, however, disagrees with the course of the medical treatment contending that Defendant Morgan failed provide the "standard" medical treatment. (Doc. No. 1 at 6-7). This disagreement does not entitle Plaintiff to prevail in a Section 1983 action, and Plaintiff has failed to alleged "exceptional" circumstances to overcome this finding.

Further, while Plaintiff alleges Defendant Morgan failed to provide standard medical treatment and this omission caused him injury, Plaintiff admits that he is presently receiving treatment to address his seizure disorder. Plaintiff has merely set forth the elements for medical negligence or malpractice and this fails to state a claim under Section 1983 for medical indifference. Plaintiff's complaint demonstrates that he was treated at Marion Correctional and the hospital following the occurrence of his seizures, and that he continued to receive treatment following his release from the hospital. Defendant Morgan's Motion to Dismiss, (Doc. No. 24), is GRANTED and Defendant Morgan is DISMISSED from this suit with prejudice.

Because Defendant Morgan is no longer a party to this case, his pending Motion for Protective Order, (Doc. No. 27), is DISMISSED as moot.

B.    Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff seeks leave to file an amended complaint naming Superintendent Sid Harkleroad and Security Threat Group Officer Stephen Shook. (Doc. No. 17). Plaintiff already named these

7

proposed defendants in his original complaint, however, the U.S. Marshals Service reports that the summons and complaint were returned as undeliverable at the addresses provided by Plaintiff for both Defendants Harkleroad and Shook. (Doc. Nos. 15; 16). In his motion to amend, Plaintiff does not seek to add additional allegations against these defendants. Rather, he is seeking to ensure that the Defendants are served with process. The Court will DENY Plaintiff's Motion to Amend, (Doc. No. 17), and order that the NC DPS provide address information for Defendants Harkleroad and Shook under seal for the purpose of effecting service on these defendants. The NC DPS shall have twenty (20) days from entry of this order to provide the necessary contact information.

      C.      <u>Plaintiff's Omnibus Motion and Defendant Bass's Related Motions</u>

Plaintiff filed an Omnibus Motion, (Doc. No. 32), seeking assistance from the Court in obtaining discovery from the defendants; clarification on the process returned as undeliverable as to Defendants Harkleroad and Shook; and assistance in addressing Defendant Morgan's motion for a protective order. The Court has previously addressed the service issues on Defendants Harkleroad and Shook.

The Local Rules provide that "enforceable discovery does not commence until the issuance of a Scheduling Order." LCvR 26.1. The Court has not yet entered a scheduling order in this case. Therefore, Plaintiff's motion to compel discovery is premature and is DENIED without prejudice.

Defendant Bass's motion for an extension of time to respond to discovery requests, (Doc. No. 20), and for a protective order, (Doc. No. 33), are also premature and DENIED without prejudice.

8

D.  Plaintiff's Motion to Appoint Counsel

In his Motion to Appoint Counsel, (Doc. No. 38), Plaintiff contends that he is unable to afford counsel and that his lack of legal experience and access to resources suggest that he should be entitled to counsel. The law is clear that a civil litigant does not have a constitutional right to counsel. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Ct. of Iowa, 490 U.S. 296, 298 (1989) (noting that 28 U.S.C. § 1915 does not authorize the compulsory appointment of counsel); see also Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968) (noting that obtaining the assistance of counsel in a civil case "is a privilege not a right.").

Instead, pursuant to 28 U.S.C. § 1915(e)(1), the Court has discretion to request the assistance of an attorney for an indigent person in a civil case. In order to warrant the Court's exercise of this discretion, the litigant must demonstrate the existence of exceptional circumstances. Whisenant, 739 F.2d at 163. The existence of exceptional circumstances depends upon "'the type and complexity of the case, and the abilities of the individuals bringing it.'" Id. (quoting Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982)). A plaintiff can show exceptional circumstances by demonstrating that he "has a colorable claim but lacks the capacity to present it." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

The Court has examined Plaintiff's Complaint, and finds that Plaintiff is adequately representing himself at this stage of the litigation. Plaintiff's motion for appointment of counsel is DENIED.

9

Case 1:12-cv-00048-RJC   Document 58   Filed 02/20/13   Page 9 of 12

E. <u>Motions for Judgment as a Matter of Law</u>

As noted above, court-ordered discovery has not commenced in this case. In his first Motion for Judgment as a Matter of Law, (Doc. No. 39), Plaintiff seeks to "uncover factual information about the events that gave rise to [his] case," including gathering of evidence for use in support or defense of a motion for summary judgment, at trial or in considering his motion for judgment as a matter of law. In addition, Plaintiff moves for the opportunity to allow the defendants to "explain their version of the 'material facts' of this case and provide the court with evidence, if any, they may rely on."[1] (Doc. No. 41: Memorandum in Support of Motion for Judgment as a Matter of Law at 2).

By this Order, the Court directs the NC DPS to provide the current addresses for Defendants Harkleroad and Shook, if known. Following receipt of this information, the Court will order the U.S. Marshals Service to serve process on these defendants. After all defendants have answered or otherwise plead, the Court will enter a Scheduling Order setting forth deadlines for conducting court-ordered discovery.

Plaintiff's first Motion for Judgment as a Matter of Law, (Doc. No. 39), which is a hybrid between a motion to compel discovery and a motion for summary judgment, is DENIED without prejudice as premature.

---

[1] The Court finds that Plaintiff's first motion for judgment as a matter of law, to the extent it seeks to introduce information outside of the pleadings, is one for summary judgment which Defendants are entitled to oppose with materials as provided for in Rule 56 of the Federal Rules of Civil Procedure. In as much as court-ordered discovery has not commenced, the Court will provide the parties with an opportunity to serve discovery requests consistent with the Federal Rules of Civil Procedure.

10

In support of his second Motion for Judgment as a Matter of Law, (Doc. No. 42), Plaintiff argues that "there is no legally sufficient evidentiary basis on which a jury could find for the other party." (Doc. No. 42 at 1). Federal Rule of Civil Procedure 50(a) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Plaintiff's second Motion for Judgment as a Matter of Law, (Doc. No. 42), is also DENIED without prejudice as premature.

   F.   Plaintiff's Motion for Default Judgment

Finally, Plaintiff's Motion for Default Judgment, (Doc. No. 43), against Defendants Harkleroad and Shook is DENIED as these defendants have not yet been served with process and are therefore not in default. See FED. R. CIV. P. 55(a).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Leave to Amend Complaint, (Doc. No. 17), is **DENIED** without prejudice;

2. Defendant Larry Bass's Motion for Extension of Time to Respond to Discovery Requests, (Doc. No. 20), is **DENIED** without prejudice;

3. Defendant John Morgan's Motion to Dismiss for Failure to State a Claim, (Doc. No. 24), is **GRANTED**;

4. Defendant John Morgan's Motion for Protective Order, (Doc. No. 27), is **DISMISSED** as moot;

5. Plaintiff's Omnibus Motion, (Doc. No. 32), is **GRANTED in part and DENIED in part**. To the extent Plaintiff's Motion asks this Court to compel discovery, it is **DENIED** without prejudice as premature. To the extent that Plaintiff's Motion asks this Court to facilitate service of process on Defendants Harkleroad and Shook, it is **GRANTED**.

The Court hereby **ORDERS** the North Carolina Department of Public Safety to provide the addresses of Defendants Sid Harkelroad and Stephen Shook, under seal to the Clerk of Court, within **twenty (20) days** from entry of this Order. Upon receipt of this information, the Clerk of Court is respectfully directed to prepare process for delivery to the U.S. Marshals Service. Upon receipt, the U.S. Marshals Service shall serve process on Defendants Harkleroad and Shook;

6. Defendant Larry Bass's Motion for Protective Order, (Doc. No. 33), is **DENIED** without prejudice;

7. Plaintiff's Motion to Appoint Counsel, (Doc. No. 38), is **DENIED**;

8. Plaintiff's Motions for Judgment as a Matter of Law, (Doc. Nos. 39; 42), are **DENIED** without prejudice; and

9. Plaintiff's Motion for Default Judgment against Defendants Harkleroad and Shook, (Doc. No. 43), is **DENIED** without prejudice.

Signed: February 20, 2013

Robert J. Conrad, Jr.
Chief United States District Judge