IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12-cv-00048-RJC

| | |
|---|---|
| MARION LAMONT SHERROD, | ) |
| Plaintiff, | ) |
| v. | ) |
| SID HARKLEROAD, Superintendent at North Carolina Department of Corr.; JOHN MORGAN, Medical Provider at North Carolina Department of Corr.; FNU EDWARDS; STEPHEN SHOOK, Sgt. Officer at North Carolina Department of Corr.; PATRICIA MCENTIRE, E-Unit Manager at North Carolina Department of Corr.; MARGARET JOHNSON, Nurse at North Carolina Department of Corr.; LARRY BASS, Nurse at North Carolina Department of Corr., | ) ) ) ) ) ) ) ) ) ) ) ) ) **ORDER** |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion for Judgment on the Pleadings, (Doc. No. 121); Plaintiff's Motion for Summary Judgment, (Doc. No. 123); Plaintiff's Motions for Leave to File an Amended Complaint, (Doc. Nos. 111, 124), Plaintiff's Motions for Appointment of Counsel, (Doc. Nos. 112, 114), Plaintiff's Motion for an Order Compelling Discovery, (Doc. No. 117); Plaintiff's Motion for Default Judgment, (Doc. No. 126); and Plaintiff's Motion for Judgment as a Matter of Law, (Doc. No. 130).

For the reasons that follow, Defendants' Motion for Judgment on the Pleadings will be GRANTED, and Plaintiff's complaint will be DISMISSED with prejudice.

1

I.      BACKGROUND

Plaintiff is a prisoner of the State of North Carolina who filed a pro se complaint contending the defendants violated his civil rights by being deliberately indifferent to his serious medical needs, by engaging in acts of negligence, and by violating his right to access the courts through interference with his legal mail.

According to his complaint, Plaintiff was transferred to Marion Correctional Institution on September 2, 2009, "as a known inmate with a chronic seizure disability." (Doc. No. 1: Compl. at 7).  Plaintiff contends that despite this "known" seizure disorder, Defendant John Morgan, a medical provider with the North Carolina Department of Public Safety, was deliberately indifferent to this medical condition by "[f]ailing in his duty to provide or renew medical restrictions and supplying documentation of said restrictions [] for the physical accommodation of his seizure disability." (Id.). Plaintiff provides one example where he contends that Defendant Morgan expressed deliberate indifference by allowing Defendant Patricia McEntire to place him in a top tier cell on November 15, 2009, and from which he later fell and suffered serious injury. Plaintiff contends this action, or inaction, led to "substantial harm" due to the "consistent 'deliberate indifference' of the consideration of a known physical disability . . ." (Id.).

After he fell from the top tier, Plaintiff contends that Defendant Morgan continued to provide inadequate medical care by failing to provide the "standard" treatment. Plaintiff reiterates that he suffered long-lasting harm and that he is being treated by ECU Physical Therapy "for his back pain and loss of feeling in lower extremities from his incident on 11-15-09." (Id. at 8).

Plaintiff filed written grievances concerning his injury and treatment, and he alleges a conspiracy arose which led to harassment and retaliation during the investigation into the grievances. For instance, Plaintiff contends that Defendant McEntire subjected him to "discrimination, harassment and retaliation . . . through the submission of fraudulent statements of [witnesses] by her subordinates . . . and the failure to investigate" Plaintiff's grievances. (Id. at 9).

Plaintiff alleges Defendants Margaret Johnson and Larry Bass, whom Plaintiff identifies as nurses within Marion Correctional, "joined in conspiracy with custody staff" to portray Plaintiff as acting aggressively during his seizure episodes that occurred on November 15, 2009. Plaintiff charges that Defendants Johnson and Bass submitted fraudulent statements which were devoid of any actual "observations of Plaintiff's seizure disability" and this action led to continued medical indifference and increased pain. Plaintiff concludes by alleging that actions or omissions of Defendants Johnson and Bass, in suppressing information regarding his "known" seizure disorder, led to retaliation against him and was motivated by "evil" intent such that his right to be free from cruel and unusual punishment was violated. (Id. at 9-11).

Plaintiff contends that Stephen Shook, who worked as a security officer within Marion Correctional, accepted the version of events provided by Defendants Johnson and Bass and as a consequence, Plaintiff was upgraded to a higher security threat level (Security Threat Group "STG").

Plaintiff continues by alleging that after his November 2009 seizure, prison officials began opening his legal mail which was part of unrelated, ongoing litigation. Plaintiff complained to "non-judicial government officials and other resources within the Department of

3

Corrections, by using his right to 'privileged' mail." Some of this mail appears to have been intercepted, according to Plaintiff, and he was singled out for punishment for "sending out sealed 'privileged mail.'" (Id. at 14). In particular, Plaintiff contends that despite his protests regarding his legal mail, no action was taken to address the situation. Plaintiff further alleges that prison officials, specifically Defendants Shook and Edwards, who is the mailroom supervisor, restricted his ability to send legal mail by citing Plaintiff's STG classification. Plaintiff maintains these restrictions violated his constitutional right to send and receive confidential legal mail, unduly limited his access to the courts, and are in retaliation for his grievances concerning his November 2009 seizure-related injury. (Id. at 16-17).

In his claims for relief, Plaintiff requests a declaration that his rights have been violated, both through the treatment of his seizure disorder, and the limitation on his right to access the courts; that the defendants be held criminally liable for violation of his First Amendment rights; that he be awarded compensatory damages in the amount of $1,000,000 against each defendant, and an award of punitive damages in the amount of $500,000 against each defendant; and for appointment of counsel. (Id. at 5-6).[1]

II.     STANDARD OF REVIEW

Rule 12(c) motions are governed by the same standard as motions brought under Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993) (internal citation omitted). But the court need not accept

---

[1] Defendants Morgan and Bass were previously dismissed from this action after the Court found that Plaintiff had failed to state an actionable claim. (1:12-cv-00048, Doc. Nos. 58, 107).

allegations that "contradict matters properly subject to judicial notice or by exhibit." Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006) (quoting Veney v. Wyche, 293 F3d 726, 730 (4th Cir. 2002)). The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fed R. Civ. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes."). In contrast to a Rule 12(b)(6) motion, the court may consider the answer as well on a motion brought pursuant to Rule 12(c). Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

Finally, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519,

5

520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). In assessing whether the complaint states a claim for relief, this Court must determine whether the complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).

III. DISCUSSION

A case filed under 42 U.S.C. § 1983 requires a deprivation of a right secured by federal law by a person acting under color of state law. See Maine v. Thiboutot, 448 U.S. 1 (1980); Gomez v. Toledo, 446 U.S. 635, 640 (1980). There is no dispute that each of the defendants were acting under color of state law.

A. November 15, 2009 fall

Plaintiff contends that one or more defendants knew about his serious seizure disorder and deliberately violated his Eighth Amendment rights by placing him in a top tier cell and failing to properly supervise and treat him after he fell.

A claim pled under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment falls within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs." Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a

6

detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575–76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled on other grounds by, Farmer v. Brennan, 511 U.S. 825, 837 (1994).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md.1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

The constitutional right is to medical care. A claim based solely on a difference of opinion as to the quality of such care is not sufficient to raise a constitutional claim. Id. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

Finally, as noted allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle,

429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

After reviewing the record in this matter, the Court finds that Plaintiff's allegations are speculative and fail to state a claim for relief. For instance, Plaintiff was transferred to Marion Correctional on November 2, and his accident occurred on November 15, and he simply assumes in his complaint – without sufficient factual support – that all of the defendants had intimate knowledge about his seizure disorder, and after being armed with this knowledge the defendants (1) deliberately tried to cause his injury by placing him in a top tier cell, (2) deliberately endangered him as he was conducted down the steps after the fall, and they deliberately failed to provide proper medical treatment.[2]

Plaintiff has also failed to carry his burden of demonstrating that any of the defendants were deliberately indifferent to his serious medical needs. At best, he contends that he is dissatisfied with the scope and course of his treatment, and to the extent he alleges negligence in his medical treatment or in placing him in a top tier cell and in transporting him down the stairs after his fall, these claims must fail.

Finally, Plaintiff complains he was placed in the STG after he began to file grievances after his fall, however this claims fails – on the facts presented here – because prison officials are given broad discretion when classifying conditions of confinement. See, e.g., Sandin v. Connor, 515 U.S. 472, 485-86 (1995); O'Bar v. Pinion, 953 F.2d 74, 83 (4th Cir. 1991) (noting that

---

[2] Plaintiff raised the substance of these claims he presents herein in a complaint filed with the North Carolina Industrial Commission. His case was dismissed because the Commission found his contentions regarding his "known" seizure disorder and that he had medical restriction on his housing was without foundation. (Id., Doc. No. 22-2).

"changes in conditions of confinement (including administrative segregation), and the denial of privileges are matters contemplated within the scope of the original sentence") (citing Montayne v. Haynes, 427 U.S. 236, 242 (1976)). Plaintiff has failed to present allegations sufficient to sustain an actionable claim here and it will be dismissed.

    A.    Legal mail

In asserting a claim that his First Amendment right to access the courts, Plaintiff contends that Defendant Harkleroad, "acting in concert" with Defendant Shook, whom he identifies as an officer with Security Threat Group, and Defendant Edwards, the mailroom supervisor, "joined in [a] conspiracy to 'punish' Plaintiff for his protected rights and deny his access to courts." (1:12-cv-00048, Doc. No. 1: Compl. at 14).

  Plaintiff describes an incident on November 20, 2009, in which he contends that incoming legal mail was opened when it was processed in the mailroom, and another instance on February 4, 2010, when his legal mail was held for ten days. (Id. at 14-15). Plaintiff also vaguely contends there was a general trend of opening his legal mail, but he fails to provide any specific detail regarding other instances or what individuals may have participated in such conduct.

There is no question that prisoners must have reasonable access to present claims in court. See Bounds v. Smith, 430 U.S. 817, 824-25 (1977). However, in order to show a denial of access to the courts, a prisoner must demonstrate an actual injury or that a defendant's alleged conduct impeded his right to access the courts. See, e.g., Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). Plaintiff identifies a couple of isolated incidents where his legal mail was opened, but Plaintiff has failed to demonstrate that these incidents impeded his access to the courts nor has met his burden of

demonstrating any actual injury. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (finding "a few isolated instances" of opened legal mail does not state a valid constitutional claim for denial of access to the courts).

IV. Pending motions

    A. Motions for leave to file an amended complaint (Doc. Nos. 111, 124)

In Plaintiff's motions to amend, he seeks to add as defendants employees of the North Carolina Department of Public Safety: Timothy McMahan, Kristine Lemon, and Brianna Suttles. Plaintiff contends these defendants were involved in the conspiracy to violate his civil rights. The Court previously denied as futile a motion to amend his complaint to add these same defendants after noting that Plaintiff's contention that these defendants were negligent in transporting him or in placing him in a upper-tier cell was not actionable in a § 1983 claim. (1:12-cv-00048, Doc. No. 106: Order at 2) (citing Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (finding a "mere lack of due care by a state official" insufficient to state a § 1983 claim); Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995).

Plaintiff also seeks to add a claim pursuant 42 U.S.C. § 1985 (civil conspiracy) and § 1986 (neglect to prevent). Plaintiff's motions to amend will be denied as futile as he has failed to demonstrate a conspiracy or a failure to prevent harm.

    B. Motions for appointment of counsel (Doc. Nos. 112, 114)

The Court observes there is no absolute right to the appointment of counsel in civil actions such as this one. Therefore the movant must present "exceptional circumstances" in order for the Court to seek the assistance of a private attorney if the plaintiff is unable to afford counsel. See Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987); 28 U.S.C. § 1915(e)(1) (no

absolute right to attorney). After liberally reviewing the allegations in this case, the Court finds that Plaintiff has failed to make the requisite showing and his motions for appointment of counsel will be denied.

B.   Motion to compel discovery (Doc. No. 117)

The Court finds that this motion should be denied as Plaintiff's requests are overly broad and the documents filed by the parties in this action sufficiently address the issues regarding Plaintiff's claims for relief.

V.   CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to present a claim upon which relief may be granted and Defendants' motion for judgment on the pleadings will therefore be granted. 28 U.S.C. § 1915A(e)(2)(B)(ii).

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Judgment on the Pleadings is **GRANTED**, (Doc. No. 121), and Plaintiff's complaint is **DISMISSED with prejudice**.
2. Plaintiff's Motions for Leave to File Amended Complaints are **DENIED**. (Doc. No. 111, 124).
3. Plaintiff's Motion to Compel Discovery is **DENIED**. (Doc. No. 117).
4. Plaintiff's Motions for Appointment of Counsel are **DENIED**. (Doc. Nos. 112, 114).
5. Plaintiff's Motions for Summary Judgment, (Doc. No. 123); for Default Judgment, (Doc. No. 126); and for Judgment as a Matter of Law, (Doc. No. 130) are **DENIED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED**.

Signed: March 30, 2016

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
United States District Judge